IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 4, 2017

**STATE OF TENNESSEE EX REL. DEEDRA CLIMER BASS v.
JOSE RAMON GONZALEZ-PEREZ**

**Appeal from the Juvenile Court for Shelby County
No. J8696     Nancy Percer Kessler, Special Judge**

_____

**No. W2016-00655-COA-R3-JV**

_____

Jose Ramon Gonzalez-Perez ("Father") appeals the March 7, 2016 order of the Juvenile Court for Shelby County ("the Juvenile Court") finding him in contempt for non-payment of child support. Father raises several issues including whether Father can be held guilty of contempt when benefits Father receives pursuant to 33 U.S.C.A. § 901 *et seq*., the Longshore and Harbor Workers' Compensation Act, are exempt from "all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt . . . " under § 916 of the Longshore and Harbor Workers' Compensation Act; whether the Longshore and Harbor Workers' Compensation Act preempts inclusion of Father's benefits from the calculation of child support; and whether Father was guilty of contempt for non-payment of child support. We find and hold that although the benefits Father receives are exempt from levy, execution, attachment, etc., Father may be found guilty of contempt; that the Longshore and Harbor Workers' Compensation Act does not preempt the inclusion of the benefits Father receives from the calculation of child support; and that Father had the present ability to pay child support and willfully failed to do so making Father guilty of contempt. We, therefore, affirm the March 7, 2016 order of the Juvenile Court finding Father in contempt for non-payment of child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY W. ARMSTRONG, JJ., joined.

Lee J. Chase, Memphis, Tennessee, for the appellant, Jose Ramon Gonzalez-Perez.

Herbert H. Slatery, III, Attorney General and Reporter; and M. Cameron Himes, Assistant Attorney General for the appellee, State of Tennessee ex. rel Deedra Climer Bass.

## OPINION

### Background

Father and Deedra Climer Bass ("Mother") are the parents of the minor child Claudia Christina Gonzalez, who was born in February of 1998. In September of 1998 an order was entered directing Father to pay $436.46 per month in child support.

In 2002, Father was injured on the job, and as a result of those injuries Father receives benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 *et seq*. In November of 2005, Father filed a petition seeking to modify child support. An order was entered in November of 2005, modifying Father's child support obligation to $203 per month plus $25 per month toward existing arrears.

At some point, the State became involved in this case pursuant to Title IV-D of the Social Security Act. The State filed a petition for contempt for non-payment of child support on September 9, 2014. A hearing was held before a Magistrate. After the hearing, the Magistrate entered Findings and Recommendations on January 7, 2015, which state, in pertinent part:

> 3. That although benefits under [the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 *et seq*. ("The Act")] are not assignable under 33 U.S.C.A. § 916, the defendant was and is able to pay child support and willfully refused to pay.
> 4. That the allegations of the petition are sustained.
> 5. That the defendant is in contempt of this Court.
> 6. That the defendant has the present ability to purge himself of contempt by making a partial payment on his arrearage in the amount of $5,000.00, a part of the amount he is in arrears.
> 7. That the defendant be confined to the Shelby County Jail for 30 days or until he purges himself of contempt by paying to the Clerk of Court the sum of $5,000.00, a part of the amount he is in arrears, but said sentence shall be suspended until the end of business on December 11, 2014 for the defendant to pay said purge. If the defendant fails to make the purge payment on or before December 11, 2014, an attachment pro corpus shall

2

be issued for the defendant and he will be confined as ordered until he purges himself of contempt by paying $5,000.00.

8. That beginning on December 1, 2014, the defendant's Longshore and Harbor Workers' Compensations [sic] benefits are to be paid to the defendant through an annuity purchased and paid for by the insurer under the Longshore and Harbor Workers' Compensation Act pursuant to Exhibit 14A included in the defendant's Memorandum of Law and Argument. The monthly sum of the annuity is to be $2,263.73 plus 1% annual increase for 20 years or life, whichever is longer. The total value of the lifetime payments to the defendant from the annuity are estimated to exceed $1,000,000.00 based on the defendant's estimated remaining life expectancy.

9. That payments pursuant to said annuity are assignable, and the defendant's on-going child support of $203.00 per month and $100.00 per month toward the arrears shall be paid by income assignment beginning January 1, 2015, to the Central Child Support Receipting Unit, P.O. Box 305200, Nashville, TN 37229. Payment of arrears at the rate shown above is a minimum payment and does not preclude the petitioner from collecting the judgment by other means, such as tax refund intercept, lien, or levy and execution.

Father filed a request for a rehearing before a judge on the petition for contempt. A hearing was held before the Juvenile Court[1]. At the hearing, George Leavell testified. Mr. Leavell explained that Father is a quadriplegic, and that Father receives benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 *et seq*. ("the Act"). These benefits are paid through a trust ("the Trust"). Mr. Leavell is the trustee of the Trust, which he explained was established in July or August of 2014. Mr. Leavell stated that the Trust was established because "people were just stealing [Father] blind." He further stated that "keeping [Father] safe and free from predators out there has been a challenge."

Mr. Leavell testified that Father receives approximately $2,247 per month from the Trust. When asked how the Trust was handled, Mr. Leavell explained that he "had established a bank account, and the bank has issued an ATM card. And they will put funds on an ATM card so that [Father] can go to an ATM and get the cash to go get the groceries." The bank account is in the name of the Trust and is administered only under Mr. Leavell's auspices.

---

[1] The March 7, 2016 order of the Juvenile Court stated that Judge Dan H. Michael "finds it necessary to be absent from holding Court . . ." and "appoints as substitute judge, Nancy Percer Kessler . . . ." Special Judge Kessler heard the case.

Mr. Leavell testified that he pays Father's monthly bills. He stated that he pays a utility bill of about $275 per month, a cable bill of about $115, and a cell phone bill of about $56. Mr. Leavell also pays Father's homeowner's insurance of about $201, and property taxes, which he stated run about $250 per month although they are paid annually. Additionally, Mr. Leavell testified that he pays about $150 for yard work, about $100 for housecleaning, and about $600 for Father's food and general living expenses. Mr. Leavell puts about $400 per month aside for repairs and maintainence on Father's house. Father also has a monthly clothing allowance of about $100.

Mr. Leavell testified that it has been his experience since the Trust was established that Father's expenses have been running in excess of $2,000 each month. Mr. Leavell explained that some of that money is budgeted for things like house repairs that will be needed in the future. The house where Father resides was provided and purchased by Liberty Mutual. Mr. Leavell testified that Father lives alone.

After the hearing, the Juvenile Court entered its detailed order on March 7, 2016, finding and holding, *inter alia*:

2. The petitioner, Deedra Climer Bass, (hereinafter "Mother") and the defendant, Jose Ramon Gonzalez-Perez, (hereinafter "Father") are the parents of one child together, Claudia Christina Gonzalez, born February . . . 1998.

3. On or about September 25, 1998, this Court ordered Father to pay child support in the amount of $436.46, which included a 5% clerk's fee, resulting in a net child support amount of $415.68 monthly, to begin on September 25, 1998.

4. On or about March 13, 2002, Father sustained permanent injuries and received benefits pursuant to the Longshore and Harbor Workers' Compensation Act, which were payments made directly to Father.

5. On or about November 14, 2005, the original order was modified to decrease child support from $415.68, and Father was ordered to pay child support in the amount of $203.00 monthly, beginning November 1, 2005.

6. The child support order of November 14, 2005, has not been modified.

7. On or about January 12, 2011, the State of Tennessee filed a Petition for Citation for Contempt of Court against Father for non-payment of child support.

8. On or about May 10, 2011, that contempt of court action was dismissed due to Father's "medical condition." The underlying child support order from November 14, 2005, in the amount of $203.00 monthly was not addressed or modified.

9. The child support order of $203.00 per month continued to accrue.

4

10. On or about September 9, 2014, the State of Tennessee filed another Petition for Citation for Contempt of Court against Father for non-payment of child support.

11. The contempt action was heard by a magistrate on December 10, 2014, finding Father guilty of contempt of court for non-payment of child support, and sentencing him to 30 days in the Shelby County Jail or "until he purges himself of contempt by paying to Clerk of Court the sum of $5,000.00" to be paid by the end of business the following day.

12. The $5,000.00 purge payment was paid and Father was not incarcerated for the contempt. This was the first payment toward child support in over six (6) years.

13. The Request for Hearing Before the Judge was filed on December 11, 2014 by or on behalf of Father.

14. The State's records show that as of April 30, 2015, Father owes on-going child support of $203.00 per month and his child support arrears are $25,623.25, not including the statutory interest of 12% per annum or 1% per month. The Arrears Computation is attached hereto and incorporated herein as Exhibit 1.

15. Father, through counsel, first argues that because he is disabled, he owes no child support as he has no "earned income."

16. Second, Father's counsel argues that the Order from the contempt of court hearing May 10, 2011, should be interpreted as a modification of the child support order to $0.00.

17. Third, Father's counsel argues that due to the initial source of income from the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A., Sections 901 *et seq.*, those funds cannot be reached by an income assignment order for payment of child support.

18. At the contempt of court hearing on December 10, 2014, the Magistrate found that beginning December 1, 2014, Father's Longshore and Harbor Workers' Compensation benefits are to be paid to Father through an annuity purchased and paid for by the insurer under the Longshore and Harbor Workers' Compensation Act pursuant to Exhibit 14A included in the [F]ather's Memorandum of Law and Argument. The monthly sum of the annuity is to be $2,263.76, plus 1% annual increase for 20 years or life, whichever is longer. The total estimated value of the lifetime payments to Father from the annuity exceed $1,000,000.00, based on Father's estimated remaining life expectancy.

19. Counsel for Father called as a witness Mr. George Lovell [sic], who is the trustee for the annuity purchased on behalf of Father.

20. Mr. Lovell [sic] testified that the workers' compensation insurance carrier, Liberty Mutual, paid Father directly, in the approximate amount of

5

$1,800.00 per month, plus his mortgage payments. Liberty Mutual paid for modifications to the home where Father and his then wife lived to accommodate Father's disability. After the settlement, Father and his wife divorced and Liberty Mutual purchased the marital home from Father's former wife.

21. Mr. Lovell [sic] testified that in July or August, 2014, he assisted in the establishment of the annuity and trust for Father to keep him safe from predators who were "stealing him blind." Now, Mr. Lovell [sic], as the trustee, pays all of Father's expenses from the trust. Mr. Lovell [sic] testified that he pays the utilities, cable, cell phone, home owners insurance, property taxes, yard maintenance, home repairs, clothing, house cleaning, and living expenses, all of which total approximately $2,200.00 per month. Additionally, Mr. Lovell [sic] testified the trust fund bought Father a new washing machine, and air conditioning unit. Father has access to funds for groceries and miscellaneous spending money with an ATM card for a bank account in the trust fund's name. Father has no signatory privileges on this account and Mr. Lovell [sic] transfers funds into the account for Father to use at his own discretion.

22. Since the hearing on December 10, 2014, the $5[,]000.00 purge payment was made and Father has made regular monthly child support payments.

* * *

2. This Court's order from November 14, 2005 is a valid final order. The Order is clear, concise, and unambiguous that Father's child support obligation was reduced from $436.45 "to $203.00 monthly, toward the support of the minor child(ren), beginning November 1, 2005, to be paid to the Central Child Support Receipting Unit, . . . ." Father made no payments from 2008 until [F]ather's purge payment in December, 2014, while the testimony clearly shows that [F]ather was receiving income from the workers' compensation settlement and willfully refused to pay. Father had the ability to pay child support as evidenced by his regular payments since the December, 2014 contempt hearing, and his purge payment of $5,000.00 demonstrates he had the present ability to pay, but willfully refused to do so.

3. Child support is not based on "earned income" as argued by Father's counsel. The Tennessee Child Support Guidelines define gross income to include income from trusts and annuities, disability or retirement benefits, worker[']s compensation benefits, and judgments recovered for personal injuries, in addition to wages or other "earned" income. Tennessee Child

6

Support Guidelines, Rule 1240-2-4-.04([sic](3)(a)(1)(xi), (xii), (xiv), (xv), and (xvii). Father's counsel argues that because the initial source of the funds is the federal Longshore and Harbor Workers' Compensation Act, Father's income is "exempt from all claims of creditors . . . for recovery or collection of a debt. . . ." 33 U.S.C.A. section 916. While benefits paid to Father under The Act are not assignable under 33 U.S.C.A. section 916, he is still responsible for the support of his child. "Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support. . . ." Tenn. Code Ann. Section 34-1-102. There was an order for Father to pay child support in the amount of $203.00 per month, plus $25.00 toward the child support arrears, and [sic] did not pay.

4. The only issue before the Court on January 12, 2011, was the State's Petition for Citation for Contempt of Court against Father for non-payment of child support. The Court found Father was not in contempt of court at that time "due to his medical condition." The future child support payments were not terminated. The arrears were not forgiven. Father's argument of res judicata applies only to Father's present ability to make a purge payment on January 12, 2011, nothing else.

5. Father's "debts" of his mortgage, utilities, cable, cell phone, homeowner[']s insurance, property taxes, home repairs, yard maintenance, house cleaning, clothes, and food and entertainment expenses are and have been paid for him, and even for his wife while married. Yet, he did not see fit to make sure his responsibility to support his only child was being paid. Counsel for Father argues that all of Father's funds are shielded by The Act. The Court finds this argument to be without merit. Following the argument of Father's counsel, none of Father's living expenses could be paid by the funds obtained through The Act, as they are "debts" he accrues. The Act may shield Father's funds from collection through an income assignment order, but at no time was Father relieved of his duty to support his only child.

6. The Court finds that Father's funds have been shielded only by the discretion of the Father and his Trustee. The order from November 14, 2005, is a valid order; Father knew he was under an order to pay child support in the amount of $203.00 per month; he willfully failed or refused to pay it; and he has the present ability to pay the child support and make a purge payment.

7. The State and counsel for Father are ordered to submit proposed findings of fact and conclusions of law by May 15, 2015. To date, Father has failed to submit proposed findings of fact and conclusions of law.

8. The ruling of the Magistrate on December 10, 2014 is reconfirmed as the decree of the Court as Jose Ramon Gonzales-Perez was guilty of contempt of Court for non-payment of child support at the time of the hearing.

9. The annuity payments are assignable and the Father's on-going child support obligation of $203.00 per month and an additional $100.00 per month toward the arrears shall be paid by Father or by an income assignment beginning January 1, 2015, to be paid to the Tennessee Central Child Support Receipting Unit, P.O. Box 305200, Nashville, TN 37229. Payment of arrears at the rate shown above is a minimum payment and does not preclude the petitioner from collecting the judgment by other means, such as tax refund intercept, lien or levy, and execution.

Father appeals the finding of contempt to this Court.

## **Discussion**

Father raises four issues on appeal, which we quote:

1. Whether the Respondent, a longshore marine worker covered under the federal *Longshore and Harbor Workers' Compensation Act,* 33 U.S.C.A. § 901 *et seq.,* who experienced a job-related injury resulting in permanent and total paraplegia and for whom his sole benefit was created a trust to receive his monthly worker's compensation payment from an annuity purchased by the worker's compensation insurer of Respondent's then employer and approved by the United States Department of Labor Office of Workers' Compensation Programs Sixth Compensation District, can be guilty of contempt of court because of his alleged willful failure to pay child support monies (monthly and for arrearages) under an income assignment order directed to him, notwithstanding the applicable federal statute, 33 U.S.C.A. at § 916 which provides as follows:

> No assignment, release or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

2. Does the Constitution of the United States under the Commerce Clause (Article I, Section 8, Clause 3, regarding "navigable waters"), the Supremacy Clause (Article 6, cl. 2) and other federal statutes [Merchant

8

Marine Act of 1920 P.L.66-261 (the Jones Act) designed to regulate maritime commerce] and the Longshore and Harbor Workers Compensation Act enacted in 1927, federally preempt the Tennessee statutes regarding garnishment (Tenn. Code Ann. 26-2-101 *et seq.*); preempt and prevent the occurrence of willfulness as used in contempt proceedings – contempt (Tenn. Code Ann. 29-9-102); support (Tenn. Code Ann. 26-2-108); Tenn. Code Anno. 36-5-101 *et seq.*; and in alleged violations of Tenn. Comp. R. & Regs. 1240-02-04-.02 *et seq.*, under the circumstances of this case? ("The powers to regulate commerce comprehends the control for that purpose and to the extent necessary, of all the navigable waters of the United States . . . For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress." *United States v. Rands*, 389 U.S. 121 (1967)).

3. Is the Respondent in willful contempt of court by failing to pay child support?

4. What is the correct calculation of support claimed to be an arrearage?

The first three issues as stated by Father are, in actuality, arguments aimed at the dispositive issue of whether the Juvenile Court erred in finding and holding Father in contempt of court for non-payment of child support. With regard to civil contempt, this Court explained in *State ex rel. Murphy v. Franks*:

> [C]ivil contempt is utilized "where a person refuses or fails to comply with an order of court in a civil case; and punishment is meted at the instance and for the benefit of a party litigant." *Sullivan*, 137 S.W.2d at 307; see also Pivnick, Tenn. Circuit Court Practice § 3:19 (2010 ed). As stated by our Supreme Court, ["i]f imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). In a civil contempt case, the contemnor "carries the keys to the prison in his own pocket...." *Id.* (citations omitted). Persons found to be in civil contempt, may purge themselves of contempt by complying with the court's order. *Ahern*, 15 S.W.3d at 78. Civil contempt, contrary to criminal contempt, only requires that the defendant be given notice of the allegation and an opportunity to respond. *Flowers*, 209 S.W.3d at 611. To find civil contempt in a case such as this, the petitioner must establish that the defendant has failed to comply with a court order. *Chappell v. Chappell*, 37 Tenn. App. 242, 261 S.W.2d 824, 831 (Tenn. 1952). Once done, the burden then shifts to the defendant to prove inability to pay. *Id.* If the defendant makes a prima facie case of inability to pay, the burden will then shift to the petitioner to show that the respondent has the ability to

pay. *State ex rel. Moore v. Owens*, No. 89-170-11, 1990 WL 8624 (Tenn. Ct. App. February 7, 1990) (reversing a finding of contempt upon holding that respondent's testimony of inability to pay was unimpeached and uncontradicted by the petitioner*); see also* Garrett, Tenn. Practice Tenn. Divorce, Alimony & Child Custody § 16-4 (2009).

* * *

Findings of civil contempt, on the other hand, are reviewed under an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). As stated by our Supreme Court:

> An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs [sic] reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

*Id.* In reviewing the trial court's finding of civil contempt, we review its factual findings with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Tennessee Rule of Appellate Procedure 13(d). *Id.* at 357.

*State ex rel. Murphy v. Franks*, No. W2009-02368-COA-R3-JV, 2010 WL 1730024, at **3-4 (Tenn. Ct. App. April 30, 2010), *no appl. perm. appeal filed*. "The burden is on the contemnor to show inability to perform, and where the alleged contemnor has 'voluntarily and contumaciously brought on himself disability to obey an order or decree, he cannot avail himself of a plea of inability to obey as a defense to a charge of contempt.' " *Evans v. Abdullah*, No. 01A01-9802-CV-00098, 1999 WL 20777, at *1 (Tenn. Ct. App. Jan. 20, 1999), *Rule 11 appl. perm. appeal denied June 7, 1999* (quoting *Bradshaw v. Bradshaw*, 133 S.W.2d 617, 619 (Tenn. Ct. App. 1939)).

In his brief on appeal, Father argues that because the benefits he receives are not subject to "levy, execution, and attachment or other remedy for recovery or collection of a debt . . .," pursuant to § 916 of the Longshore and Harbor Workers' Compensation Act, these benefits cannot be considered in determining whether Father was in contempt for failing to pay child support. Longshore and Harbor Workers' Compensation Act § 916. In full, 33 U.S.C.A. § 916 provides:

> § 916. Assignment and exemption from claims of creditors
>
> No assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

Longshore and Harbor Workers' Compensation Act § 916.

Father is mistaken. While the benefits Father receives under the Longshore and Harbor Workers' Compensation Act are not subject to "levy, execution, and attachment or other remedy for recovery or collection of a debt . . .," nothing in the Act prevents them from being considered as assets that Father could use to pay child support. *Id*.

We note that our Supreme Court addressed a similar argument in *Hobbs v. Hobbs* involving a Tennessee statute that "precludes assignment of workers' compensation benefits and exempts those benefits from the claims of creditors," and the argument that said statute conflicted with the Tennessee Child Support Guidelines. *Hobbs v. Hobbs*, 27 S.W.3d 900, 903 (Tenn. 2000). The *Hobbs* Court stated:

> Gross income as defined in the Child Support Guidelines includes sources of income that the Department of Human Services has determined are appropriate to use in arriving at an amount of child support. The definition does not address whether those sources of income are subject to assignment, attachment, or execution to satisfy a child support obligation.
>
> In contrast, Tenn. Code Ann. § 50-6-223 precludes assignment of workers' compensation benefits and exempts those benefits from the claims of creditors. "Assignment" in this context refers to the actual attachment or divestment of the worker's benefits and to the transfer of the right to those benefits to another party. The clause "exempt from claims of creditors" secures the worker's award from attachment, levy, or garnishment by

11

creditors. Neither subsection (b) nor subsection (c) prohibits consideration of workers' compensation benefits as income [for purposes of calculating child support].

The concepts of gross income and attachment or assignment are thus wholly distinct.[2] The determination of gross income consists of a computation that does not involve actually executing or levying upon the workers' compensation benefit. Computing gross income does not involve looking beyond the terms of the guidelines themselves. Accordingly, the guidelines and statute in question do not conflict. Mr. Hobbs' workers' compensation payment, whether periodic or lump sum, must be considered in calculating his gross income under the Child Support Guidelines.

*Id*. (footnote in original).

Because we are dealing with a federal statute in the case now before us and not a Tennessee statute, the holding in *Hobbs* does not control the outcome of the case now before us. The reasoning in *Hobbs*, however, is both sound and persuasive. Father has pointed to nothing within the Longshore and Harbor Workers' Compensation Act, nor has our research uncovered anything within the Act, that precludes the benefits that Father receives from being considered by a Tennessee court both in calculating the amount of child support and when making a determination of whether Father is in contempt for non-payment of child support.

Furthermore, we note that the United States Supreme Court addressed an argument similar to Father's argument in a case involving a father in Tennessee who was receiving veteran's disability benefits and was held in contempt for non-payment of child support in *Rose v. Rose*, 481 U.S. 619, 630-32, 107 S.Ct. 2029, 2036-38, 95 L.Ed.2d 599 (1987). The *Rose* Court held, *inter alia*:

Appellant next claims that state-court jurisdiction is preempted by 38 U.S.C. § 3101(a), which provides that "[p]ayments of benefits . . . under any law administered by the Veterans' Administration . . . made to, or on

---

[2] Reference to the interrelation of gross income and workers' compensation benefits under the federal Internal Revenue Code may offer a helpful comparison. Gross income as defined in the Internal Revenue Code is broadly encompassing and itself makes no provision for exemptions. *See* I.R.C. § 61. The code later provides, however, that workers' compensation benefits are to be excluded from gross income. *See* I.R.C. § 104(a)(1).

Similarly, Rule 1240-2-4-.03(3)(c) of the Tennessee Child Support Guidelines provides explicit exclusions from Gross Income as defined in the guidelines. Workers' compensation benefits are not listed therein.

12

account of, a beneficiary . . . shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Though the legislative history for this provision is also sparse, it recognizes two purposes: to "avoid the possibility of the Veterans' Administration . . . being placed in the position of a collection agency" and to "prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." S.Rep. No. 94–1243, pp. 147–148 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5241, 5369, 5370. Neither purpose is constrained by allowing the state court in the present case to hold appellant in contempt for failing to pay child support. The contempt proceeding did not turn the Administrator into a collection agency; the Administrator was not obliged to participate in the proceeding or to pay benefits directly to appellee. Nor did the exercise of state-court jurisdiction over appellant's disability benefits deprive appellant of his means of subsistence contrary to Congress' intent, for these benefits are not provided to support appellant alone.

Veterans' disability benefits compensate for impaired earning capacity, H.R. Rep. No. 96–1155, p. 4 (1980), U.S. Code Cong. & Admin. News 1980, p. 3307, and are intended to "provide reasonable and adequate compensation for disabled veterans and their families." S.Rep. No. 98–604, p. 24 (1984) (emphasis added), U.S. Code Cong. & Admin. News 1984, pp. 4479, 4488. Additional compensation for dependents of disabled veterans is available under 38 U.S.C. § 315, and in this case totaled $90 per month for appellant's two children. But the paucity of the benefits available under § 315 belies any contention that Congress intended these amounts alone to provide for the support of the children of disabled veterans. Moreover, as evidenced by § 3107(a)(2), the provision for apportionment we have already discussed, Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents.[3] . . . [W]e conclude that § 3101(a) does not extend to protect a veteran's disability benefits from seizure where the veteran invokes that provision to avoid an otherwise valid order of child support.

*Id*. (footnote in original but renumbered).

---

[3] That children may rightfully expect to derive support from a portion of their veteran parent's disability benefits is further evident in the regulation prohibiting apportionment once a child has been legally adopted by another person who, as a result of the adoption, assumes the support obligation. See 38 CFR § 3.458(d) (1986).

Father also argues in his brief on appeal that the United States Constitution, the Longshore and Harbor Workers' Compensation Act, and other federal statutes preempt the Tennessee statutes and the Tennessee Child Support Guidelines. To the extent that Father is attempting to raise a constitutional challenge, Father failed to notify the Attorney General of this challenge as required by Tenn. R. Civ. P. 24.04. As such, Father has waived any constitutional challenge. *See Taylor v. Beard*, 104 S.W.3d 507, 511 (Tenn. 2003) (finding that because appellants failed to notify the Attorney General of constitutional challenge, issue had been waived). To the extent that Father is attempting to claim that federal statutes preempt Tennessee law, Father has failed to point to any specific federal law that would preempt the Tennessee Child Support Guidelines, nor has our research disclosed any. As discussed, § 916 provides only that "such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived." Longshore and Harbor Workers' Compensation Act § 916. Nothing in the Tennessee statutes or the Tennessee Child Support Guidelines are contrary to 33 U.S.C.A. § 916. This being so, there is nothing that § 916 preempts or precludes as to the Tennessee statutes and the Tennessee Child Support Guidelines. Neither the Tennessee statutes nor the Tennessee Child Support Guidelines attempt to make Father's "compensation and benefits" under the Longshore and Harbor Workers' Compensation Act not exempt as provided for by § 916 of the Act. Just as the federal statute involved in *Rose* did not preempt Tennessee child support law, neither does the Longshore and Harbor Workers' Compensation Act.

In his brief on appeal, Father asserts that he does not have income from employment, and argues that, therefore, he cannot be held guilty of contempt. Father is mistaken. As this Court reiterated in *Cisneros v. Cisneros*:

> The ability to pay means precisely what it seems to mean. The individual must have the income or financial resources to pay the obligation at the time it is due. Spending money on other bills or obligations does not absolve the failure to pay court-ordered child support. In fact, having the means to meet other financial obligations evidences an ability to pay child support.

*Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *10 (Tenn. Ct. App. Nov. 25, 2015), *no appl. perm. appeal filed* (quoting *Buttrey v. Buttrey*, No. M2007-00772-COA-R3-CV, 2008 WL 45525, at *2 (Tenn. Ct. App. Jan. 2, 2008), *no appl. perm. appeal filed*). Thus, a person need not have income from employment in order for a court to find that the person has the ability to pay child support. It is quite possible for a person to have financial resources other than income from employment that could be utilized to pay child support.

The record on appeal reveals that Father has financial resources other than income from employment as he receives workers' compensation benefits under the Longshore and Harbor Worker's Compensation Act. The Tennessee Child Support Guidelines provide, in pertinent part, that for purposes of calculating a child support obligation gross income "whether earned or unearned" includes, among other things, "Workers compensation benefits, whether temporary or permanent." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1)(xv). Thus, although Father may not have income from employment, he does have income pursuant to the Tennessee Child Support Guidelines for purposes of calcuating his child support obligation.

Father also argues that he cannot be held guilty of contempt because he is not willfully or voluntarily unemployed or underemployed. Again, Father is mistaken. The State was not required to prove that Father was willfully or voluntarily unemployed or underemployed.[4] Rather, the State had to prove that Father had failed to comply with a court order, which the State did. Once the State made that showing, the burden shifted to Father to prove that he had an inability to pay child support. If Father had made a prima facie case of inability to pay, then the burden would have shifted back to the State to show that Father had the ability to pay.

The evidence in the record on appeal shows that Father failed to show that he had an inability to pay child support. In fact, Mr. Leavell, the trustee of the Trust established for Father, testified that Father receives receives approximately $2,247 per month from the Trust, and that out of that money Mr. Leavell not only pays Father's bills, but also puts some money aside for future expected expenses such as house repairs. Thus, Father has access to assets that could be used to pay his child support just as it is used to pay his other financial obligations. Father failed to make a prima facia case of an inability to pay child support.

In his brief on appeal, Father also states that in May of 2011, pursuant to a previous petition for contempt, the Juvenile Court found Father was not guilty of contempt for non-payment of child support due to his "medical condition," and that nothing has changed with regard to Father's medical condition. Father argues that because of the finding in the May 2011 order, the "State should be precluded from making the same claim again, which has already been previously determined in favor of [Father] as to his inability to work because of his 'medical conditions,' . . . ."

We note that the State is not making the claim that Father has an ability to work. The record on appeal reveals that Father is a quadriplegic, and the State does not contest

---

[4] Nor did the Juvenile Court find that Father was willfully or voluntarily unemployed or underemployed.

this fact. The fact that Father has an inability to work, however, does not automatically lead to the conclusion that Father has an inability to pay child support. As discussed more fully above, the evidence in the record on appeal shows that Father has the ability to pay child support despite the fact that Father is unable to work. As discussed more fully above, § 916 of the Longshore and Harbor Workers' Compensation Act does not preclude or prevent Father's benefits from being considered in the calculation of his child support or being considered as a financial resource giving him the ability to pay his child support obligation.

The final issue raised by Father with regard to the calculation of child support claimed to be arrearage rests upon Father's previous arguments with regard to Father's benefits not being subject to "levy, execution, and attachment or other remedy for recovery or collection of a debt . . .," and the fact that Father does not have income from employment. Father asserts that because of these facts, the child support arrearage should be calculated to be zero. We have discussed these arguments completely already and need not do so a second time. Father is mistaken.

As noted by the Juvenile Court in its March 7, 2016 order, Tenn. Code Ann. § 34-1-102 provides that: "Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support . . . ." Tenn. Code Ann. § 34-1-102(a) (2015). Father has a duty to support his child. The Juvenile Court found that Father's "child support payments were not terminated. The arrears were not forgiven." Further, the Juvenile Court found "that Father's funds have been shielded only by the discretion of the Father and his Trustee." The evidence in the record on appeal does not preponderate against these or any other findings made by the Juvenile Court.

For all of the reasons discussed above, we find no error in the Juvenile Court's March 7, 2016 order finding Father in contempt of court for non-payment of child support. We, therefore, affirm the Juvenile Court's March 7, 2016 order.

### Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the appellant, Jose Ramon Gonzalez-Perez, and his surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

16